**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.**

DENVER BOOK SOCIETY LLC
a Colorado limited liability company,

      Plaintiff,

v.

BOOK SOCIETY, LLC,
a California limited liability company,

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Denver Book Society LLC ("DBS"), by and through its undersigned attorneys, for its Complaint against defendant Book Society, LLC ("Defendant"), alleges as follows:

**OPENING STATEMENT**

1. DBS seeks declaratory relief that DBS is not infringing Defendant's asserted designation "book society" describing Defendant's book society in Berkeley, California, or engaging in unfair competition under applicable federal or state law, and seeks an award to DBS of its reasonable attorneys' fees and costs incurred in defending against meritless allegations of infringement.

**INTRODUCTION**

2. This case involves claims by Defendant alleging sole and exclusive ownership of the designation "book society" – a designation that Defendant has not and does not use on an

exclusive basis and which, as a merely descriptive or even generic term, is not entitled to trademark protection under applicable law.

3.      Defendant is attempting to monopolize the descriptive words "book society" to itself, even though that word fairly describes the book society services offered by myriad third parties, including DBS. Defendant has refused to reasonably negotiate resolution of the instant dispute. Instead, Defendant has made baseless litigation threats, alleging that DBS's use of the descriptive term "Denver Book Society" to fairly describe a book society and retail store located in Denver, Colorado is likely to cause consumer confusion, mistake or deception.

4.      Defendant has made these baseless claims even though the parties operate under different names in geographically distinct areas and Defendant has failed to offer evidence substantiating even a single instance of actual consumer confusion. Based on all of the circumstances, including the fact that Defendant does not own a valid and protectible mark, the differences between the parties' names, and the conditions and locations of sale, there is no likelihood of confusion between Defendant's asserted designation and DBS's use of "Denver Book Society." DBS is entitled to declaratory judgment that it is not infringing any trademark of Defendant or engaging in any act constituting unfair competition.

**PARTIES**

5.      DBS is a limited liability company organized under the laws of the state of Colorado, with a principal place of business at 1700 N. Humboldt Street, Denver, Colorado 80218.

6.      Defendant is a limited liability company organized under the laws of the state of California, with a principal place of business at 2945 College Ave., Berkeley, California 94705.

## JURISDICTION AND VENUE

7.     This Counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the trademark laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 et seq.

8.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 2202.

9.     This Court has personal jurisdiction over Defendant because Defendant has purposefully directed activities within this jurisdiction including: (a) directing cease and desist letters to DBS in this judicial district; and (b) offering a "pop up" wine tasting event in this judicial district. Additionally, any counterclaims for trademark infringement or unfair competition that may be asserted by Defendant are compulsory in nature, and this Court has personal jurisdiction over DBS because DBS is formed under the laws of the State of Colorado and has its principal place of business in this judicial district such that it is "at home" in this judicial district.

10.    Venue is proper under 28 U.S.C. § 1391.

## BACKGROUND

### *The Denver Book Society*

11.    Denver Book Society is the creation of Rich Garvin, a philanthropist, avid reader and book lover who is dedicated to fostering the love of books in the communities in which he has lived and served. Mr. Garvin is a supporter of independent bookstores.

12.    Mr. Garvin sits on the advisory council to Aspen Words, a vibrant literary community founded in 1976 in Aspen, Colorado, which offers a variety of programs designed to encourage writers, inspire readers, and connect communities through storytelling.

3

13.    After a failed bid to acquire Denver's Tattered Cover bookstore out of bankruptcy (Barnes & Noble won the bid), Mr. Garvin was inspired to launch an independent bookstore in Denver, Colorado that could serve as an independently-owned gathering place and community hub for lovers of books.

14.    Mr. Garvin selected the name "Denver Book Society" to clearly describe his business – a book society operating in Denver, Colorado – and to reflect its community-focused mission. A book society is no novel concept. Book societies have existed in various forms for centuries. One of the most well-known book societies – and a model for future book societies – was founded in the United Kingdom in the 1920s.

15.    In February 2026, Denver Book Society opened its doors. It was created to be a "third space" for the Denver community – a space between work and home where people can slow down, share ideas, and rediscover the joy of connection. DBS offers a book shop, café and social events (including local author evenings). It also offers book society memberships. Just like historic book societies, DBS offers book society services for the Denver community to gather and share their love of books.

16.    DBS offers its book society services *exclusively* in Denver, Colorado. DBS has a website, located at www.denverbooksociety.co, which clearly describes that DBS is a fresh new space located *in North Denver* with drinks and social events.

17.    DBS's website has no e-commerce functionality. It is not possible to make online e-commerce purchases of products or books offered for sale by DBS.

18.    DBS uses the words "Denver Book Society" to accurately describe its book society services located in Denver, Colorado. It uses the words "Denver Book Society" on its exterior

4

signage in red font in close connection to a distinctive logo featuring a dog wearing spectacles, reading a book and sipping a glass of wine.

**Denver Book Society Dog Logo:**





**(Website Logo)**                    **(Exterior Logo)**

19.     The dog logo is the most important element of DBS's brand presence. Because the words "Denver Book Society" merely describe the geographic location and services offered by DBS, the dog logo serves to distinguish DBS and its book society services in the Denver community. The dog logo also helps communicate that DBS is a dog-friendly establishment. Its resident dog, Cooper, is a beloved Australian Shepherd that greets DBS patrons and community members. Many patrons comment on how much they love DBS's dog logo.

20.     DBS adopted the designation Denver Book Society in good faith. DBS was aware of other book societies, but did and does not believe those words alone can function as a trademark or be monopolized by any one party. Indeed, DBS has not sought to apply to register the words "Denver Book Society" as a trademark or service mark or otherwise monopolize the term "book society" to itself. DBS adopted the words Denver Book Society to describe its book society and retail location for its book society community to gather located in Denver, CO.

***Book Society Berkeley, California***

21.     Defendant operates a wine bar and book society located in Berkeley, California, which trades, simply, as "Book Society."

22.     Defendant uses the words "book society" to describe its services, which it describes on its website as "an elevated book and wine lounge." On information and belief, Defendant primarily is a wine bar and establishment serving alcoholic beverages, which serves a locus for mingling and discussion about books, and makes only incidental sales of books.

23.     In Defendant's own words, Defendant hosts in-store gatherings and states, "book clubs are at the heart of who we are at Book Society – a meaningful way to gather, connect, and build community through a shared love of reading."

24.     Further, Defendant's website invites visitors to "join the club" to "be the first to know about important news and exclusive updates." Defendant therefore directly invites consumers to join the "society" where consumers can learn about Defendant's "book" and wine services. Defendant goes on to state that "[w]ith events ranging from author talks to book clubs and creative gatherings, Book Society fosters meaningful connections through shared stories" and describes "*a vibrant community of fellow book (and wine) lovers*" – i.e., a book society.

25.     A "book" is a "printed or written literary work" and "society" means "organization or association of persons who engage in a common profession, activity or interest." The word "society" also means "a social circle or a group of social circles having a clearly marked identity, e.g., *a literary society*" (emphasis added).[1]

---

[1] *See* www.merriam-webster.com/dictionary/society (definition of "society").

26.     Accordingly, the designation "book society" used in connection with a book society and place for a community of book lovers to gather is a merely descriptive – or even generic – designation, and is not a valid, protectable or enforceable trademark.

27.     Notably, Defendant applied to register the words "book society" with the United States Patent and Trademark Office ("USPTO"), but the examining attorney for U.S. Trademark App. No. 98705707 issued a descriptiveness refusal to Defendant in connection with "organizing chapters of a book reading club and promoting the interests of the members thereof" and a partial descriptiveness refusal for "retail book store services; on-line retail store services featuring downloadable electronic books and audio books; online retail book store services featuring in-store order pickup," requiring the Defendant to disclaim the term "book" as lacking any trademark significance whatsoever.

28.     As of the date of this Complaint, Defendant has not obtained federal registration for its "book society" designation.

29.     Even if the words "book society" could be a protectible mark when used in connection with book society services (it is not), such a descriptive and/or generic mark is entitled to an extremely narrow scope of protection.

30.     Moreover, due to differences in each party's distinctive logos and geographically distinct trade channels, there no likelihood of confusion between Defendant and DBS.

31.     Defendant offers its book society and wine lounge services in Berkeley, California. Although Defendant offered a single wine tasting event in Denver, Colorado one year ago, Defendant, on information and belief, has no business plans to offer its services within the metro Denver area.

32. Defendant's website makes clear that Defendant's book society is located in Berkely, California. Its website states: "An elevated book and wine lounge now open in Berkeley, CA."

33. Additionally, Defendant uses the words "book society" in a distinctive gold-colored art deco font, together with a stylized book and wine bottle logo, as shown below:

**Book Society Book and Wine Logo:**





**(Website Logo)**                    **(Exterior Logo)**

34. Defendant's art deco stylization and book and wine bottle logo look nothing like DBS's red dog logo:

**Book Society and DBS Logos, Side-by-Side:**





**(Defendant's Logo)**                    **(DBS Logo)**

35. Additionally, unlike DBS, because Defendant operates a wine lounge, Defendant does not permit minors (including infants) in its book society. Nor does Defendant permit non-

service animals at its location. This exclusive, wine-lounge focused and adult-only atmosphere is therefore far from the dog-friendly and family-friendly community offered by DBS.

36.     Defendant's services are so exclusively targeted to adults that Defendant's website is age-gated to restrict users under the age of 21.

37.     Due to the geographic remoteness of the parties' respective book societies, it would be unlikely – even impossible – for a customer to walk into one party's location and mistakenly believe he or she was stepping into a book society nearly 1,000 miles away.

38.     Defendant contacted DBS "concerned" about the similarity between the alleged brands in August 2025. However, after independent investigation, DBS determined in good faith that no party can or does own the words "book society" to describe a book society, and also took care to ensure that DBS adopted a markedly different logo and specified that its book society was located in Denver, Colorado, so as to avoid any potential confusion. DBS has no intent or desire to pass off its services as those of a book society and wine lounge operating nearly 1,000 miles away.

39.     Nonetheless, on February 21, 2026, Defendant sent an aggressive cease and desist letter demanding "immediate cessation" within 7 days of the words Denver Book Society, removal of all signage and merchandise within 10 days, removal of DBS's website and social media handles, transfer of the Internet domain www.denverbooksociety.co to Defendant (even though Defendant does not operate in Denver), cessation of all advertising in 14 days, destruction of inventory within 14 days, and an accounting of all revenue to Defendant so that Defendant could seek disgorgement of all of DBS's profits or royalties. In addition to these aggressive and

9

avaricious demands, Defendant threatened to institute suit for federal trademark infringement and unfair competition.

40.     Although DBS engaged in settlement negotiations with Defendant in good faith, Defendant refused to engage in further reasonable settlement discussions, stating: "[O]ur client will not engage in further mediation, settlement discussions, or negotiations. We have been left with no alternative but to proceed with enforcement."

41.     Defendant's claims of infringement and unfair competition are without merit because Defendant does not own a valid trademark, does not own any trademark rights in connection with book society services in Denver, Colorado, and there is no likelihood of confusion between Defendant's "book society" designation and DBS's "Denver Book Society" designation.

42.     Defendant has suffered no harm or injury as a result of DBS's adoption and use of the designation "Denver Book Society" and it is implausible that Defendant has lost a single sale to an independent book society operating nearly 1,000 miles away with no e-commerce functionality.

### FIRST CLAIM (DECLARATORY RELIEF)

43.     DBS repeats and re-alleges the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

44.     An actual controversy exists between DBS and Defendant as a result of Defendant sending the cease and desist letter and subsequent communications, and threatening to commence litigation.

45.     Considering the entire context in which DBS's services and Defendant's services are offered and sold, including, *inter alia*: (a) the parties' respective, non-overlapping and

10

geographically remote locations in Denver, CO and Berkeley, CA; (b) Defendant's use of a stylized, art deco logo for its "book society" designation; (c) DBS's use of a red, serif-font logo in close connection with its dog logo; and (d) the mere descriptiveness and market saturation of various coexisting "book society" designations, there is no confusing similarity between DBS's services offered under the designation "Denver Book Society" and Defendant's services offered under the designation "book society."

46.     In addition, Defendant does not own a valid trademark because the term "book society" is merely descriptive without secondary meaning, or even a generic term incapable of acquiring any trademark significance whatsoever.

47.     DBS is entitled to issuance of a declaratory judgment declaring and adjudging that its adoption, use and registration of the designation "Denver Book Society" in connection with a local bookstore and book society serving, exclusively, the Denver community does not violate the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and does not constitute infringement or unfair competition with respect to any purported rights claimed by Defendant under the Lanham Act or other federal law, statute statutory law, or state common law.

**SECOND CLAIM (INVALIDATION OF FEDERAL TRADEMARK APPLICATION, 15 U.S.C. § 1119)**

48.     DBS repeats and re-alleges the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

49.     Because the term "book society" is merely descriptive or, alternately, generic, Defendant is not entitled to issuance of its pending U.S. Trademark App. No. 98705707 for the words "book society."

50.     Due to Defendant's unlawful attempts to monopolize the words "book society" to itself, DBS will be irreparably injured and damaged should the aforementioned application issue as a federal registration, and unless the pending application is refused, and/or any issued registration is cancelled by order of the Court, DBS will suffer further injury and harm.

**PRAYER FOR RELIEF**

WHEREFORE, DBS respectfully requests that the Court enter judgment as follows:

A.      Declaring that DBS's use of the designation "Denver Book Society" in connection with a local bookstore and book society serving the Denver Community does not constitute infringement or unfair competition with respect to any rights claimed by Defendant under the Lanham Act or other federal law, state statutory law, or state common law;

B.      Dismissing any counterclaims that Defendant may file, with prejudice;

C.      Pursuant to 15 U.S.C. § 1119, issuing an order to the Director of the United States Patent and Trademark Office enjoining issuance to Defendant of any trademark registration for "book society," including Defendant's U.S. Trademark App. No. 98705707, or ordering cancellation should such pending application proceed to issuance of a registration;

D.      Determining that this is an exceptional case and awarding DBS its reasonable attorneys' fees and costs incurred in this action, and other equitable and monetary relief; and

E.      Granting DBS such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury for all matters so triable.

Dated: April 17, 2026

s/ Airina L. Rodrigues
Airina L. Rodrigues, #56149
Sarah K. Dewar, #55141
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: (303) 223-1100
Fax: (303) 223-1111
Email: arodrigues@bhfs.com;
sdewar@bhfs.com

*Attorneys for Plaintiff Denver Book Society LLC*